MARTIN M. SPENCER, Respondent, *v.* CITY OF NEW YORK, Appellant.

Supreme Court, Appellate Term, Second Department, April 6, 1955.

*Peter Campbell Brown, Corporation Counsel (Andrew Bellanca* and *Seymour B. Quel* of counsel), for appellant.

*Benjamin M. Zelman* for respondent.

PETTE, J. Plaintiff brought this action to recover the difference between his military pay while he was in the Army and the pay which he would have received had he remained at home in his civilian position as a social investigator for the department of welfare. Defendant has paid to the plaintiff the difference between his Army pay and the salary he was receiving at the time he was ordered into active duty, but has excluded from consideration (1) the annual increments which plaintiff would have received in his city position if he had remained at home and (2) the cost-of-living bonuses which were awarded to similar employees who remained at home.

After this action was commenced defendant conceded that plaintiff was entitled to have the mandatory salary increments included in the computation of his pay differential. While this concession appears in the answer and was stipulated on the record, and is again admitted in defendant's brief, defendant's notice of appeal states that it appeals from the judgment and " from each and every part of said judgment as well as from the whole thereof." Presumably this was an inadvertent error in drawing the notice of appeal, arising perhaps from force of habit.

This case has been here on a prior appeal. Heretofore both parties apparently were of the opinion that only a question of law was involved. . Plaintiff, therefore, moved for judgment on the pleadings. The motion was granted and this court affirmed. The Appellate Division, however, reversed on the ground that there were questions of fact which necessitated a trial. The Appellate Division decision is reported (279 App. Div. 1021) and reads as follows: " In an action under subdivision 1 of section 245 of the Military Law, by a city employee to recover the part of his salary or compensation that equals the excess of such salary or compensation over his military salary or compensation, order of the Appellate Term affirming a judgment of the Municipal Court, Borough of Brooklyn, City of New York, which grants plaintiff's motion for judgment on the pleadings in the form of summary judgment, and the judgment of the Municipal Court, reversed on the law and the facts, the motion denied, and the matter remitted to the Municipal Court for trial, with costs in this court and in the Appellate Term to appellant to abide the event. Judgment

on the pleadings (Rules Civ. Prac., rule 112) should not be granted where material allegations of the complaint are denied by the answer. A cost of living bonus may be included in the phrase, ' salary or compensation ', as used in subdivision 1 of section 245 of the Military Law, but only when such bonus has been lawfully awarded or appropriated. The extracts from the resolutions of the appellant's board of estimate, together with the arguments presented by appellant, are persuasive that there was no cost of living bonus awarded, but the persuasion is merely prima facie. Respondent is entitled to an opportunity to establish the material allegations of the complaint which have been denied. Appellant concedes that the respondent is entitled to the ordinary statutory increments to salary.''

The present appeal results from the judgment entered in the Municipal Court after a trial, and the question presented is whether plaintiff has proved that the bonus '' has been lawfully awarded or appropriated.''

Plaintiff testified that prior to March 10, 1941, he was a member of the National Guard. On that day he was called into active duty with the United States Army. At the time that he was called into active duty he was employed by the City of New York as a social investigator for the department of welfare at a salary of $1,740 per year. Plaintiff received his honorable discharge from the Army in August, 1945, and resumed his position with the city on July 25, 1945. Presumably he had some terminal leave time due him from the Army. At any rate, no explanation is given as to how he happened to resume his civilian employment before his Army discharge officially took effect.

On his return to city employment, plaintiff was paid at the rate of $2,460 per year, of which $2,100 was basic salary and $360 was cost-of-living bonus. There appears to be no dispute as to the facts thus far.

Plaintiff read into the record from the examination before trial of defendant's employee Ferrick, who was later called by the defendant as a witness, the following testimony:

'' ' Q What salary did Spencer receive when he returned to his position? A On July 25th, 1945 when he returned, he got $1740. and on October 1st, 1945 payroll effective July 25th, 1945, his rate was fixed at ($2100.00) $2460.00.'

'' ' Q How did you arrive at the sum of $2460.00? A That would be the three bonuses of $120.00 each that he missed while he was away.'

" ' Q For what dates were these bonuses missed? A July 1st, 1943, January 1st, 1944 and July 1st, 1945.'

" ' Q Had he been in his position on these dates, he would have received those cost of living bonuses? A That's right.'

" ' Q Did all social investigators in the same title and grade as Spencer receive the cost of living bonuses to which you refer while Spencer served in the Armed Forces? A All those who were working in the same position, grade and title and who were not in the military service.'

" ' Q Did the Department of Welfare receive a specific sum for cost of living bonuses for its employees? A No.'

" ' Q From what source did the cost of living bonus for 1943 originate? A An appropriation by the Board of Estimate.'

" ' Q What was the total sum of such appropriation? A $8,000,000.' "

There was no cross-examination of the plaintiff and at this point he rested his case.

Ferrick, called by the defendant, testified that he is employed as a budget examiner; that he is the budget director's representative to the welfare department; that his duties are to examine into requests made by that department for budgetary appropriations or for permission to expend the appropriations granted. He sets up schedules for increments, salary adjustments and cost of living bonuses. He identified plaintiff's payroll and personnel records which were received in evidence as defendant's exhibit A.

From this exhibit it appears that the annual increments were " schedulized " although not paid to the plaintiff, but the cost-of-living bonus was not even " schedulized ".

Defendant concedes that plaintiff qualifies under former section 245 of the Military Law for the pay differential. The only dispute left in this case is whether or not the cost-of-living bonus should be included when computing plaintiff's pay differential. It is the defendant's contention that unless the budget director put the cost-of-living bonus on the plaintiff's budget line, plaintiff is not entitled to receive it.

Subdivision 1 of former section 245 of the Military Law (as amd. by L. 1942, ch. 727) provided in part as follows: " During the absence of any such [public] officer or employee, while engaged in the performance of ordered military or naval duty as a member of the national guard or naval militia * * * he shall receive his salary or compensation as such officer or employee, provided the period of such absence in any calendar year does not exceed thirty days. If the period of such absence

in any calendar year exceeds thirty days he shall receive for the period of absence in excess of thirty days such part of his salary or compensation as such officer or employee as equals the excess, if any, of such salary or compensation paid to him for the performance of such duty."

With respect to schoolteachers, whose salary schedules are fixed by schedules filed with the Commissioner of Education under the Education Law, it was held in two different cases that an employee, who was a member of the reserve forces and who was ordered to active duty, was entitled to receive his pay differential based on the increments he would have received had he remained at home. (*Silverstein* v. *Board of Educ. of City of N. Y.*, 190 Misc. 588, affd. 190 Misc. 990, affd. 273 App. Div. 990; *Timmerman* v. *Board of Educ. of City of N. Y.*, 274 App. Div. 934, affd. 298 N. Y. 908.) Apparently it is for that reason that the defendant is no longer questioning plaintiff's right to increments. Admittedly that is not an issue in this case. There appears to be no authoritative decision with respect to cost-of-living bonuses.

In the prior decision herein the Appellate Division said (279 App. Div. 1021): " A cost of living bonus may be included in the phrase, ' salary or compensation ', as used in subdivision 1 of section 245 of the Military Law, but only when such bonus has been lawfully awarded or appropriated." The sole question then is whether this bonus has been awarded or appropriated.

Section 67 of the New York City Charter provides:
" § *67. Salaries to be fixed by board.*— The power is vested in, and it shall be the duty of the board of estimate, except as otherwise provided in this charter or by statute, to fix the salary of every officer or person whose compensation is paid from the city treasury, other than day laborers."

It will be noted that in the city charter there is an express exception which reads " except as otherwise provided in this charter or *by statute* ". (Italics supplied.)

It is unnecessary to determine whether the provisions of section 245 of the Military Law constituted a statutory provision within the meaning of this exception. Suffice it to say, that the board of estimate did appropriate money for a cost-of-living bonus and, under the terms of the charter section above quoted, it was the duty of the board of estimate to fix the salary of every person paid from the city treasury.

The first cost-of-living bonus came into effect on July 1, 1943, and provision therefor was made in the budget of 1943–1944, a portion of which was introduced in evidence as defendant's

exhibit B. That portion reads as follows: "99–941 For adjustment of the compensation of low-paid employees to meet increased living costs, to be expended in accordance with schedules to be prepared by the Budget Director subject to the terms and conditions of this budget..................$8,000,000.00"

It is questionable whether the board of estimate could lawfully delegate its legislative power. (*Darweger* v. *Staats,* 267 N. Y. 290, 305.) Assuming, however, that this power granted to the budget director was properly limited and solely for the purpose of allocating the money to the appropriate lines, it was certainly not intended that the budget director could be arbitrary and discriminatory so as to grant a cost-of-living bonus to one employee while denying it to another in the same department and on the same pay scale. Differences in the amount granted proportionate to their salary scale may be justified and, indeed, within the intent and purpose of the board of estimate, but differences solely because an employee was away on military duty would not be justifiable on any basis and would conflict directly with the intent and purport of section 245 of the Military Law. Nothing in the budget specifically excluded those on military leave from receiving a cost-of-living bonus.

The budget director's instructions for the first cost-of-living bonus were introduced in evidence as defendant's exhibit C. So far as here pertinent, they read as follows:

"Incumbents of temporary positions and employees holding positions temporarily during military or other leaves of absence shall also receive adjustments.

"As the proposed adjustments are not intended to be permanent, the positions of employees on military leave, unless filled by a substitute, are not to be adjusted. The positions of employees on ordinary leave of absence on July 1, 1943 and not scheduled to return to duty prior to June 30, 1944 are not to be adjusted."

It will be noted that temporary employees replacing those on military leave were to receive the adjustments. Thus not only were persons in similar positions receiving the cost-of-living bonuses, but persons temporarily occupying the *very* positions temporarily vacated by those on military leave.

Defendant's exhibit E is the budget director's instructions with respect to the second cost-of-living bonus which became effective on January 1, 1944. Defendant relies on the following paragraph: "5.— This 'bonus' plan applies only to *filled positions.* No vacant position, regular or military, is to be adjusted except in the case of 'Prevailing Rate' employees

(see below).'' Thus again the personnel who were substituted for those on military leave were actually receiving these cost-of-living bonuses.

Defendant's exhibit F, which is the budget director's instructions concerning the third cost-of-living bonus, effective July 1, 1945, again stated that cost-of-living adjustments were not to be provided for military absentees, but in the same paragraph state that even temporary employees '' including military substitutes '' were to receive the cost-of-living adjustment.

In each of the budgets the board of estimate provided the funds for the cost-of-living bonus. The first bonus of $8,000,000 has been quoted above. Defendant's exhibit D is an excerpt from the budget for 1945–1946 and reads as follows: '' 9802–019 Salary Adjustments — To provide for adjustment in the rates of compensation of employees whose earning capacity is deemed inadequate and whose salaries have not been previously supplemented in a sufficient amount to provide a rate commensurate with the duties performed. These funds are to be schedulized by the Director of the Budget and distributed to the respective departments by resolution of the Board of Estimate........ $4,320,397.70 ''.

It is abundantly clear that the bonus was '' lawfully awarded or appropriated '' as required by the decision of the Appellate Division (279 App. Div. 1021). That the budget director undertook to omit military personnel could not affect the budget and was illegal as contrary to section 245 of the Military Law.

The judgment should be affirmed, with $25 costs to the plaintiff.

HART and DI GIOVANNA, JJ., concur.

Judgment affirmed.